## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| AMIR BRANDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18CV1674 JCH |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant/Cross-Claimant William Olsten's Motion for Summary Judgment, Defendants City of St. Louis and Commissioner John Hayden's Motion for Summary Judgment, and Defendant City's Motion to Dismiss or Stay Cross-Claim. (ECF Nos. 112, 115, 130). The motions are fully briefed and ready for disposition.

## BACKGROUND[1]

This case arises out of a protest in St. Louis, Missouri. The protest followed the acquittal in the criminal case of former St. Louis Metropolitan Police Department ("SLMPD") Officer Jason Stockley. The Stockley verdict, which acquitted Officer Stockley of first-degree murder, was released on September 15, 2017. (Defendant/Cross-Claimant William Olsten's Statement of Uncontroverted Material Facts in Support of his Motion for Summary Judgment ("Olsten's Facts"), ¶ 1; Statement of Uncontroverted Material Facts in Support of Motion for Summary Judgment of Defendants City and Hayden ("City's Facts"), ¶ 9). In response to the verdict, many people in St. Louis began to protest in various locations around the

---

1 The information in this section is taken primarily from Defendants' statements of uncontroverted material facts and Plaintiff's statements of additional uncontroverted material facts, to the extent the facts are supported by admissible evidence and not specifically controverted by the opposing party as required by Local Rule 7-4.01(E).

city.  (Olsten's Facts, ¶ 2; City's Facts, ¶ 10).  The protests began on the day that the verdict was released and continued for more than a month.  (City's Facts, ¶ 11).  At times, the protests grew violent in nature and required a more significant response from the SLMPD.  (*Id.*, ¶¶ 15–17, 19).[2]  At other times, the protests were peaceful.  (*Id.*, ¶¶ 23-24).

On September 29, 2017, a protest took place in downtown St. Louis near Busch Stadium.  (Olsten's Facts, ¶ 5; City's Facts, ¶ 31).  During the protest, officers from the SLMPD's special operations unit blocked off a road near the stadium to allow protesters to march in the street.  (Olsten's Facts, ¶ 11; City's Facts, ¶ 33).  At one point, as the line of protesters began to thin, officers stopped the remaining protesters to allow vehicles to move through an intersection so backed up traffic could flow.  (Olsten's Facts, ¶ 12; City's Facts, ¶ 34).  Altercations ensued shortly thereafter between officers and protesters, resulting in the use of a taser on one protestor and two arrests.  (Olsten's Facts, ¶¶ 13–16; City's Facts, ¶¶ 35–36).[3]

Officer Olsten was not involved in the altercations between the officers and protesters, but he did help escort one of the arrested protesters away from the scene.  (Olsten's Facts, ¶¶ 17, 19).  Plaintiff, who witnessed the two arrests, immediately began shouting at the officers.  (City's Facts, ¶ 37).  Other protesters hurried to the area of the arrest after the tasing.  (*Id.*, ¶ 38).  Officer Olsten was holding a pepper spray fogger at the time and gave protesters at least two directives to get back.  (Olsten's Facts, ¶ 20; Olsten's Ex. F, Maverick Video at 00:01:22:00–00:01:25:00).  Other officers gave similar directives.  (*Id.* at 00:01:17:00–00:01:25:00).

---

2 Plaintiff does not dispute that during the weekend of September 15-17, St. Louis police officers were injured, some seriously.  (City's Facts, ¶ 22).
3 At the time of the events giving rise to this lawsuit, Officer Olsten and Commissioner Hayden were on duty as members of the SLMPD.  Officer Olsten was a member of the SLMPD's special operations unit, and Commissioner Hayden was a Major.  (Olsten's Facts, ¶ 6; City's Facts, ¶ 8). Commissioner Hayden was the scene commander at the time because he was the highest-ranking officer on the scene.  (Olsten's Facts, ¶ 6).

As the officers escorted the arrested protester away, Plaintiff followed and yelled: "If you put that s*** in my face, I'll f*** you up." (Plaintiff's Statement of Additional Uncontroverted Material Facts--Olsten ("Plaintiff's Additional Facts--Olsten"), ¶ 46; City's Facts, ¶ 39 and Plaintiff's response thereto; Maverick Video at 00:01:25:00). At one point, Officer Olsten stepped toward Plaintiff and responded: "Come f*** me up then." (Olsten's Facts, ¶ 29; Plaintiff's Additional Facts--Olsten, ¶ 48; Maverick Video at 00:01:26:00-00:01:31:00). Two officers put their hands on Officer Olsten at that point to keep him moving. (Plaintiff's response to Olsten's Facts, ¶ 31; Maverick Video at 00:01:28:00).[4]

After Officer Olsten handed the arrested protester off, he remained in the area. Sergeant Eric Bartlett and Commissioner Hayden were also in the area at the time. (Plaintiff's Statement of Additional Facts—City ("Plaintiff's Additional Facts—City"), ¶ 27). By this point, Plaintiff had stopped moving toward Officer Olsten. The parties dispute the exact distance that remained between Plaintiff and Officer Olsten. (*See* Olsten's Facts, ¶ 33 and Plaintiff's response thereto). However, video evidence shows that Plaintiff and Officer Olsten were only a few feet apart and standing face-to-face. (Olsten's Ex. H, De Mian Video at 00:01:19:00–00:01:24:00). Plaintiff and Officer Olsten were standing so close to one another, in part, because Officer Olsten had walked toward Plaintiff after handing off the arrested protester. (*Id.* at 00:01:15:00–00:01:19:00).

While Plaintiff and Officer Olsten stood face-to-face, they continued to engage with one another. Plaintiff once again said: "Put that s*** in my face." (Maverick Video at 00:01:43:00–00:01:45:00). Officer Olsten responded: "Dude, back up." (Olsten's Facts, ¶ 31; Maverick Video at 00:01:44:00–00:01:45:00). Plaintiff also called Officer Olsten a "p**** a** white boy." (City's Facts, ¶ 39; Maverick Video at 00:01:47:00–00:01:48:00).

---

4 Defendants City and Hayden claim only one officer put his hands on Officer Olsten. (*See* City and Hayden's response to Plaintiff's Additional Facts--City, ¶ 24).

Another protester, Rasheen Aldridge, had walked up to Officer Olsten by this point and questioned him about the earlier use of a taser on the arrested protester. (Maverick Video at 00:01:48). Officer Olsten responded: "I didn't tase him." (*Id.* at 00:01:52).

As Plaintiff and Aldridge engaged with Officer Olsten, a female protester yelled something from the crowd. According to Defendants, the protester yelled: "Shoot this motherf***er [possibly back]!" According to Plaintiff, the protester yelled: "Shut this motherf***er down." (*See* Olsten's Facts, ¶ 35; City's Facts, ¶ 42 and Plaintiff's responses thereto). In either case, immediately thereafter Officer Olsten deployed pepper spray toward the protesters for several seconds as he walked in their direction. (Olsten's Facts, ¶ 36; City's Facts, ¶ 43; Maverick Video at 00:01:56).[5] Plaintiff was within a few feet of Officer Olsten when he was sprayed. (City's Facts, ¶ 45). Commissioner Hayden was standing near Officer Olsten when he deployed pepper spray. (*Id.*, ¶ 49).[6] Defendants maintain his back was turned at the time; Plaintiff counters that Commissioner Hayden can be seen turning toward Officer Olsten as soon as he begins pepper spraying the civilians. (*Id.* and Plaintiff's response thereto). It is undisputed that Commissioner Hayden did not give Officer Olsten or any other officer an order to deploy pepper spray. (*Id.*, ¶ 48).

After Officer Olsten deployed pepper spray, none of the protesters who were affected was arrested. (Plaintiff's Additional Facts--Olsten, ¶ 62). Nor did Officer Olsten or other officers attempt to make any arrests.[7]

---

5 Officer Olsten presents evidence that Sergeant Bartlett believed he and other officers were about to be physically harmed, and that had Officer Olsten not deployed his pepper mace to disburse the crowd, Sergeant Bartlett would have done so. (Olsten's Facts, ¶¶ 37, 38).
6 Defendants claim that Commissioner Hayden was radioing for assistance at or about the time Officer Olsten deployed pepper spray. (City's Facts, ¶ 50).
7 According to Officer Olsten, Sergeant Bartlett determined it would not be safe or practical to make further arrests due to the large and hostile nature of the crowd. (Olsten's Facts, ¶ 39).

Plaintiff filed his original Complaint in this matter on October 2, 2018.  (ECF No. 1).  In his Second Amended Complaint, filed August 9, 2019, Plaintiff lodges the following claims: First and Fourteenth Amendment violations against Defendants Hayden and Olsten (Count I); Municipal Liability *Monell*[8] claim against Defendant City (Count II); negligent infliction of emotional distress against all Defendants (Count III); Fourth and Fourteenth Amendment violation (excessive force) against Defendant Olsten (Count IV); Fourth and Fourteenth Amendment violation (failure to intervene) against Defendant Hayden (Count V); and battery against all Defendants (Count VI).  (ECF No. 35).

On September 19, 2019, Officer Olsten filed a crossclaim in this lawsuit against the City for reimbursement of all expenses and attorneys' fees incurred by him in defending against Plaintiff's claims and payment of any damages and costs awarded to Plaintiff.  (ECF No. 45).  In his original crossclaim, Officer Olsten alleged that the City was obligated to defend him against Plaintiff's claims and indemnify him against any damages awarded to Plaintiff pursuant to City Ordinance § 3.10.040(H) and SLMPD Special Order 3-05, § XXII(A).   Officer Olsten filed an amended crossclaim on September 7, 2021, adding a third basis for the City's obligation to defend and indemnify him:   Mo. Rev. Stat. § 590.502.7.  (ECF No. 53).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant.  Only disputes

---

8 *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249.

## DISCUSSION

### I.   Qualified Immunity

United States District Judge Rodney W. Sippel of this Court recently provided a detailed analysis of the doctrine of qualified immunity, which the Court quotes at length here:

> Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).
>
> To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question: (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at

issue was clearly established at the time of the offending conduct. *Brown v City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotations marks and citation omitted). "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 531 (8th Cir. 2009) (internal quotation marks and citation omitted).

*Smalley v. Gamache*, No. 4:10CV319 RWS, 2013 WL 1149146, at *2 (E.D. Mo. Mar. 19, 2013).

## A. <u>First Amendment</u>

In Count I of his Second Amended Complaint, Plaintiff asserts claims against Officer Olsten and Commissioner Hayden under § 1983 for violating his First Amendment rights. Plaintiff alleges that Officer Olsten pepper sprayed him in retaliation for exercising his First Amendment rights to associate freely in public, express his views as part of a peaceful demonstration, and gather information regarding a matter of public interest. (Second Amended Compl., ¶¶ 73-76). Plaintiff alleges that Commissioner Hayden, Officer Olsten's supervisor at the time, was standing near Officer Olsten when he pepper sprayed Plaintiff but took no steps to prevent him from doing so. (*Id.*, ¶¶ 56, 66).

### 1. <u>Officer Olsten</u>

Officer Olsten contends that summary judgment should be entered in his favor on Plaintiff's First Amendment retaliation claim because he is entitled to qualified

immunity.   Officer Olsten argues that he is entitled to qualified immunity because Plaintiff's claim is based on his alleged use of excessive force, and there is insufficient evidence to support a finding that he used excessive force.   In Officer Olsten's view, the evidence is insufficient to support such a finding because there is no evidence that he intended to pepper spray Plaintiff individually.   Officer Olsten also argues that he did not violate a clearly established right.

In his opposition, Plaintiff asserts that Officer Olsten is not entitled to qualified immunity because a reasonable jury could find that he pepper sprayed Plaintiff in a gratuitous and punitive manner for exercising his First Amendment rights.   Plaintiff argues that a jury could conclude that Officer Olsten's use of pepper spray was unnecessary and excessive because, when he was pepper sprayed, Plaintiff was peacefully protesting and not acting in a threatening or violent manner.   Plaintiff also cites several cases to show that his First Amendment rights were clearly established at the time of Officer Olsten's alleged misconduct.

An individual's right to exercise First Amendment rights without facing retaliation from government officials was clearly established in 2017, as the issue was addressed by the Eighth Circuit in 2010.   *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) (quoting *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007)) ("A citizen's right to exercise First Amendment freedoms 'without facing retaliation from government officials is clearly established.'").   As a result, the question here is whether a reasonable jury could find that Officer Olsten violated this right when he deployed pepper spray during the protest on September 29, 2017.

To establish a claim for First Amendment retaliation, a plaintiff must show:   "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse

- 8 -

action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (internal quotation marks and citations omitted). The third element requires a plaintiff to present evidence of "a causal connection between the retaliatory animus and injury." *Quraishi v. St. Charles County, Mo.*, 986 F.3d 831, 837 (8th Cir. 2021) (citation omitted). A plaintiff must show that "the retaliatory motive was a 'substantial factor' or 'but-for cause' of the adverse action." *Peterson*, 754 F.3d at 602. This requires a showing that the plaintiff was "'singled out because of [his] exercise of constitutional rights.'" *Id.* (quoting *Baribeau*, 596 F.3d at 481).

As an initial matter the Court notes that, although Plaintiff states that his claim is based on Officer Olsten's use of excessive force, the issue presented is not whether Officer Olsten's deployment of pepper spray constituted "excessive force" as that phrase is understood in the Fourth Amendment context.[9] This is because "retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001). "[T]he violation is acting in retaliation for 'the exercise of a constitutionally protected right.'" *Spencer v. Jackson Cnty., Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Cody*, 256 F.3d at 771). Therefore, with respect to Plaintiff's First Amendment retaliation claim, the Court need not determine whether Officer Olsten's deployment of pepper spray constituted excessive force. Instead, it must only determine whether a reasonable jury could find that: (1) Plaintiff engaged in protected activity, (2) Officer Olsten's deployment of pepper spray was an adverse action taken against Plaintiff that would deter an ordinary person from continuing in protected activity, and (3) Officer Olsten's deployment of pepper spray was motivated at least in part by Plaintiff's exercise of protected activity.

---

9 Plaintiff's statement that his First Amendment retaliation claim is based on Officer Olsten's use of excessive force is understandable insofar as it clarifies that his claim is not based on a retaliatory arrest. This clarification is important because, as Plaintiff correctly notes, a retaliatory arrest claim requires proof of an additional element: lack of probable cause.

Upon review of the record the Court finds that fact questions remain, sufficient to preclude the entry of summary judgment on this issue.  For example, while participating in a protest in public is generally a protected activity, a fact question remains as to whether with his taunts Plaintiff crossed into unprotected territory, and the Court finds the question is best left to a jury as factfinder.  Furthermore, while the use of pepper spray may be an adverse action that would deter an ordinary person from continuing in protected activity, a fact question remains as to whether Officer Olsten's deployment of pepper spray was motivated, even in part, by Plaintiff's engagement in a protected activity, or instead was prompted by Plaintiff's potentially unprotected activity or another cause altogether.  This is especially true in light of the intervening act of a third party, *i.e.*, the female protester's shout from the crowd.  *See Peterson*, 754 F.3d at 603 (holding that the "causal connection", *i.e.*, retaliatory motive, is generally a jury question unless it is so free from doubt as to justify taking it from the jury); *Quraishi*, 986 F.3d at 838 ("[Defendant's] motive is not so free from doubt as to justify taking it from the jury.").  The Court thus concludes that Officer Olsten is not entitled to summary judgment or qualified immunity on Plaintiff's First Amendment claim.

## 2.  **Commissioner Hayden**

Commissioner Hayden also contends that summary judgment should be entered in his favor on Plaintiff's First Amendment retaliation claim because he is entitled to qualified immunity.  Commissioner Hayden argues that he is entitled to qualified immunity because there is no evidence that he took any action or was otherwise personally involved in the use of force against Plaintiff.  He further asserts that he neither gave Officer Olsten an order to deploy pepper spray, nor had any advanced notice that force was going to be used.  Commissioner Hayden claims that Officer Olsten deployed his pepper spray based on his personal judgment, while Commissioner Hayden was dealing with a chaotic situation.

- 10 -

In his opposition, Plaintiff does not specifically address Commissioner Hayden's argument regarding his First Amendment retaliation claim.  Instead, Plaintiff appears to argue in support of his First Amendment retaliation claim and failure-to-intervene claim (Count V) simultaneously.  Plaintiff notes that Commissioner Hayden was the supervisor on the scene when Officer Olsten deployed pepper spray, and he argues that Commissioner Hayden's failure to intervene and attempt to deescalate the situation amounted to tacit approval of Officer Olsten's behavior and served to encourage him.  Plaintiff thus claims that Commissioner Hayden failed in his duty to supervise and intervene.

As discussed above, there exists a fact question as to whether Officer Olsten retaliated against Plaintiff for exercising his First Amendment rights.  Even assuming there is sufficient evidence to support a finding that Officer Olsten violated Plaintiff's First Amendment rights, however, Commissioner Hayden would still be entitled to qualified immunity.

"Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Otey v Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (citations omitted).  Each officer, "'his or her title notwithstanding, is only liable for his or her own misconduct.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  A supervisor may be held liable for an inferior officer's constitutional violation only "'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'" *Id.* (quoting *Otey*, 121 F.3d at 1155).

To establish liability for failure to supervise, a plaintiff must show that:  (1) the supervisor received notice of a pattern of unconstitutional acts committed by subordinates; (2) the supervisor demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) the supervisor failed to take sufficient remedial action; and (4) the supervisor's failure

proximately caused the plaintiff's constitutional deprivation.  *Id.* at 1002.  To establish liability for failure to train, a plaintiff must show that the supervisor's failure to train amounted to deliberate indifference to the rights of persons with whom the police come into contact and "actually caused" the plaintiff's constitutional deprivation.  *Id.*

Here, there is no evidence that Commissioner Hayden was personally involved in pepper spraying Plaintiff, and Plaintiff has not come forward with sufficient evidence to support a claim against him for failure to train or supervise.  With respect to failure to supervise, Plaintiff has not cited any other incidents as evidence that Commissioner Hayden, specifically, was on notice of a pattern of unconstitutional acts committed by his subordinates.  Instead, Plaintiff's argument regarding Commissioner Hayden focuses exclusively on the circumstances surrounding Officer Olsten's deployment of pepper spray during the protest on September 29, 2017.  Plaintiff also has not cited any evidence regarding Commissioner Hayden's training practices or lack thereof, as required for a failure-to-train claim.

In sum, even assuming there exists sufficient evidence to support a finding that Officer Olsten violated Plaintiff's First Amendment rights, Commissioner Hayden is still entitled to qualified immunity because (1) there is no evidence that he personally was involved in pepper spraying Plaintiff, and (2) Plaintiff has not come forward with sufficient evidence to support a claim against him for failure to train or supervise.  To the extent that Plaintiff's First Amendment retaliation claim against Commissioner Hayden is based on his alleged failure to intervene, Commissioner Hayden is entitled to qualified immunity for the additional reasons discussed in section I.C.  For  all of these reasons, summary judgment will be granted to Commissioner Hayden on Count I of Plaintiff's Second Amended Complaint.

### B.  <u>Fourth Amendment Excessive Force</u>

In Count IV of his Second Amended Complaint, Plaintiff alleges that Officer Olsten violated the Fourth Amendment, as his use of force against Plaintiff was objectively unreasonable and constituted excessive force.  (Second Amended Compl., ¶¶ 97-102).  In order to establish a Fourth Amendment violation, "the claimant must demonstrate a seizure occurred and the seizure was unreasonable." *Quraishi*, 986 F.3d at 839 (internal quotation marks and citation omitted).  "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *Id.* (internal quotation marks and citations omitted).  Further, to be seized "a reasonable person would have believed that he was not free to leave.  But where police attempt a show of force and an individual does not submit, the individual has not been seized." *Id.* at 839-40 (internal quotation marks and citations omitted).

In order to defeat the defense of qualified immunity in a Fourth Amendment excessive force context, Plaintiff must demonstrate that his right to be free from Defendant's particular use of force was clearly established at the time of the incident. *Shelton v. Stevens*, 964 F.3d 747, 753 (8th Cir. 2020).  "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citation omitted).  Thus, "[e]ven where an officer's action is deemed unreasonable under the Fourth Amendment, he is entitled to qualified immunity if a reasonable officer could have believed, mistakenly, that the use of force was permissible…" *Id.* (citation omitted).  "Use of excessive force is an area of the law in which the result depends very much on the facts of each case." *Id.* (internal quotation marks and citation omitted).  "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." *Id.* (internal quotation marks and citation omitted).  "A plaintiff need not show that the very action in question has previously been held unlawful, but he must establish that the unlawfulness was apparent in light of

- 13 -

preexisting law." *Ellison v. Lesher*, 796 F.3d 910, 914 (8th Cir. 2015) (internal quotation marks and citation omitted).

Upon consideration, the Court finds the Eighth Circuit's opinion in *Quraishi* is controlling and dispositive. In that case, a group of reporters with Al Jazeera America news network was covering protests that followed the death of Michael Brown in Ferguson, Missouri. *Quraishi*, 986 F.3d at 834. While they were preparing for a live broadcast, an officer with the St. Charles County police department allegedly deployed a tear-gas canister against them without probable cause. *Id.* The Eighth Circuit held that while such use would clearly violate the First Amendment, it was not clearly established that the officer's acts constituted a seizure under the Fourth Amendment. *Id.* at 840 ("Neither the district court nor the reporters cite authority that gave 'fair warning' to [Defendant] that deploying one canister of tear-gas was a seizure."). As such, the officer in *Quraishi* was entitled to qualified immunity on that claim. *Id.* at 839-40.

In the instant case, as in *Quraishi*, in order to establish a Fourth Amendment violation Plaintiff must show that a seizure occurred, and again, to be seized, a reasonable person must have believed that he was not free to leave. *Id.* at 839. *See also Molina v. City of St. Louis, Mo.*, No. 4:17CV2498 AGF, 2021 WL 1222432, at *10 (E.D. Mo. Mar. 31, 2021). Even viewing the facts in the light most favorable to Plaintiff, he cannot make such a showing. Instead, the uncontroverted facts demonstrate (1) that Plaintiff was not arrested or detained in any capacity on September 29, 2017; and (2) that neither Officer Olsten nor any other officer made any attempt to arrest or detain Plaintiff that day. Furthermore, as the Court held in *Quraishi*, this Court finds that at the time Officer Olsten deployed the pepper spray it was not clearly

established that his actions constituted a seizure.  As such, he is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.[10]

### C. <u>Fourth Amendment Failure To Intervene</u>

In Count V, Plaintiff asserts a claim against Commissioner Hayden under § 1983 for failure to intervene in violation of the Fourth Amendment.  Plaintiff alleges that Commissioner Hayden knew or should have known that Officer Olsten posed a threat to protesters, and that he would use excessive force in violation of their constitutional rights.  (Second Amended Compl., ¶ 110).  Plaintiff alleges that Commissioner Hayden had a duty to intervene and prevent Officer Olsten from violating his constitutional rights, had sufficient time and opportunity to intervene, and failed to do so.  (*Id.*, ¶¶ 111–13).  Commissioner Hayden contends that summary judgment should be entered in his favor on this claim because he is entitled to qualified immunity.

"[A]n officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment."  *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015) (internal quotation marks and citation omitted).  The Eighth Circuit has not, however, recognized an officer's duty to intervene to prevent other constitutional violations.  *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012); *Zorich v. St. Louis Cnty.*, No. 4:17-CV-1522-PLC, 2018 WL 6621525, at *24 (E.D. Mo. Dec. 18, 2018).  The Eighth Circuit has also held that "there is no clearly established law regarding a duty to intervene outside of the excessive force context."

---

10 The Court notes that in Count IV of his Second Amended Complaint, Plaintiff fails to allege he was seized in the first instance.  Instead, he frames his claim simply in terms of excessive force.  (*See* Second Amended Compl., ¶¶ 97-102).  In the Fourth Amendment context, however, force is examined as an aspect of the seizure.  *See e.g., Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (internal quotation marks and citations omitted) ("The determination whether the force used to effect a seizure was reasonable ultimately requires a case-specific balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.").

*Andrews v. Schafer*, 888 F.3d 981, 984 n. 4 (8th Cir. 2018) (citing *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013)).

As discussed above, Officer Olsten is entitled to qualified immunity on Plaintiff's excessive force claim because the record does not support a finding that Plaintiff was seized, and it was not clearly established in 2017 that use of pepper spray alone was a seizure.  Because a failure-to-intervene claim is dependent on an excessive force claim, Commissioner Hayden is entitled to qualified immunity on Plaintiff's failure-to-intervene claim.  To the extent that Plaintiff's failure-to-intervene claim is based on Commissioner Hayden's alleged failure to intervene to prevent Officer Olsten from retaliating against him in violation of the First Amendment, Commissioner Hayden is entitled to qualified immunity because there was no clearly established law regarding such a duty in 2017.  Accordingly, summary judgment will be granted to Commissioner Hayden on Count V.

## II.  Municipal Liability For First Amendment Retaliation[11]

For § 1983 liability to attach to a governmental entity, a plaintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise.  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).  In order to prove a municipal custom, Plaintiff must demonstrate:  "(1) a continuing, widespread, persistent pattern of unconstitutional misconduct; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice of the misconduct; and (3) that the plaintiff was injured as a result of the custom."

---

11 To the extent Plaintiff asserts a claim for municipal liability under the Fourth Amendment, that claim fails with the grant of summary judgment to Defendants Olsten and Hayden on Counts IV and V.  *See Corwin v. City of Indep., Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (internal quotation marks and citation omitted) ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").

*Molina*, 2021 WL 1222432, at *11 (citing *Moore v. City of Ferguson, Mo.*, 213 F.Supp.3d 1138, 1146 (E.D. Mo. 2016)).

To state a viable § 1983 claim against Defendant City for failure to train and supervise, Plaintiff must plead facts sufficient to show that (1) the City's officer training and supervision practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting these training and supervision practices, and the City's failure to train and supervise was a result of deliberate and conscious choices it made; and (3) the City's alleged training and supervision deficiencies caused Plaintiff's constitutional deprivation. *See Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). Ultimately, Plaintiff must prove that the City "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (internal quotation marks and citation omitted). Plaintiff may establish City notice of a deficiency in its procedures in one of two ways:

> First, notice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious….The second avenue for asserting a failure to train claim arises where the need for additional training may not be obvious from the outset, but a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens.

*Thelma D. By and Through Delores A. v. Board Of Educ. Of City of St. Louis*, 934 F.2d 929, 934-35 (8th Cir. 1991) (citations omitted).

In Count II of his Second Amended Complaint, Plaintiff alleges that Defendant City is liable to Plaintiff because the violations were caused by a custom and/or the City's failure to train or supervise. (Second Amended Compl., ¶¶ 82-89). Plaintiff claims that among the policies, practices, or customs that caused constitutional harm to Plaintiff are the following:

> A. SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;

- 17 -

      B.  SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

      C.  SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens [of] unlawful conduct;

      D.  Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

(*Id.*, ¶ 83). Plaintiff further maintains Defendant City had notice that its use of force training and officer supervision was inadequate and likely to result in constitutional violations, based on multiple incidents of excessive force against protesters in October 2014, November 2014, July 2015, August 2015, and September 2017. (*Id.*, ¶ 84). He elaborates by noting that several of these incidents occurred after the City entered into a settlement agreement regarding its use of chemical agents in *Templeton v. Dotson*, No. 4:14CV2019 CEJ (E.D. Mo. Mar. 25, 2015). (*Id.*, ¶¶ 31, 85-86).

      In support of their Motion for Summary Judgment, Defendants City and Hayden assert that the record fails to demonstrate a pattern of illegal conduct that was so persistent and widespread as to have the effect and force of law. Specifically, Defendants claim Officer Olsten did not deploy pepper spray to disperse peaceful protesters; instead, his use of pepper spray was in the context of threatening behavior by protesters. Defendants further maintain that other than the allegations set forth in Plaintiff's Second Amended Complaint, the record contains no facts that would allow a jury to find that the City's training practices were inadequate, that the City was deliberately indifferent to the rights of others in adopting said training practices, or that the City's inadequate training procedures caused Plaintiff's injuries.

      Plaintiff counters that "[e]ven after the *Templeton* settlement and the incidents that gave rise to it, Defendant City did not initiate or require comprehensive retraining of its officers, despite repeated, similar constitutional violations perpetrated by SLMPD officers after that

settlement and before the incident at issue in this case."  (Second Amended Compl., ¶ 86).  He elaborates in his response to Defendants' motion as follows:  "Subsequently, SLMPD updated its chemical munitions policy to incorporate the language from the *Templeton* settlement.  SLMPD did not, however, adequately train its officers regarding the *Templeton* agreement or the change in policy.  Numerous police officers, from majors to patrolmen, testified that they were not aware of the *Templeton* settlement agreement or the change in chemical munitions policy.  Many of them also testified that they never received any training whatsoever regarding the change in the chemical munitions use of force policy.  Because of this, SLMPD could not train its officers on *Templeton* or hold the officers accountable for violating *Templeton*.  Thus, nothing changed." (Plaintiff Amir Brandy's Memorandum in Opposition to the City of St. Louis and Commissioner Hayden's Motion for Summary Judgment, P. 15; *see also* Plaintiff's Additional Facts--City, ¶¶ 3-18).

Upon consideration, the Court finds that Plaintiff presents evidence from which a reasonable jury could conclude that Defendant City had notice of a pattern of unconstitutional acts committed by officers with respect to the deployment of chemical munitions in violation of citizens' First Amendment rights.  Plaintiff further presents evidence that Defendant City adopted deficient supervision and training practices with deliberate indifference to the constitutional rights of others, that these training practices were the product of the City's deliberate and conscious choices, and that the practices proximately caused Plaintiff's injury. Defendants' Motion for Summary Judgment on Plaintiff's *Monell* claim will therefore be denied.

**III.**     **Official Immunity**

Officer Olsten next asserts he is entitled to official immunity from Plaintiff's state law claims.  "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in

claims arising from their performance of ministerial acts." *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted).   A law enforcement officer's decision to use force in the performance of his duties is discretionary rather than ministerial.   *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

"[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice", however.   *Davis*, 794 F.3d at 1013 (internal quotation marks and citations omitted).   "A finding of malice requires 'conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive.'"   *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986) (citation omitted)).   "A finding of bad faith embraces more than bad judgment or negligence.   It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive."   *Id.* (internal quotation marks and citations omitted).

In his Motion for Summary Judgment, Defendant Olsten argues that Plaintiff cannot show his actions were undertaken in bad faith or with malice, as he acted reasonably and utilized only the force necessary to abate the threat posed by Plaintiff and those near him.   Plaintiff counters that when viewed in the light most favorable to Plaintiff, the evidence establishes that Officer Olsten acted with bad faith or malice when he pepper sprayed Plaintiff, as at all times Plaintiff was peacefully protesting and not threatening Officer Olsten or acting in a violent manner, no dispersal orders or warnings were made before Officer Olsten administered the pepper spray, and Officer Olsten was smiling as he pepper sprayed the protesters.

Upon consideration, the Court finds that Plaintiff states facts from which it could be found that Officer Olsten acted in bad faith or with malice when he applied pepper spray against

Plaintiff and other protesters.  The Court therefore will deny Officer Olsten's Motion for Summary Judgment based on official immunity.[12]

## IV.    **Remaining Claims**

The remaining claims in this matter include Plaintiff's claims against Defendant City for negligent infliction of emotional distress and battery under Missouri law (Counts III and VI), and Officer Olsten's crossclaim against the City for reimbursement of all expenses and attorneys' fees incurred by him in defending against Plaintiff's claims and payment of any damages and costs awarded to Plaintiff.  Having reviewed the parties' submissions, the Court believes it would be well-served by entertaining oral argument on these issues.  The Court therefore will reserve ruling on these issues until after the trial concludes, and will schedule oral argument as necessary at that time.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant/Cross-Claimant William Olsten's Motion for Summary Judgment (ECF No. 112) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Defendants City of St. Louis and Commissioner John Hayden's Motion for Summary Judgment (ECF No. 115) is **GRANTED** in part, **DENIED** in part, and **HELD IN ABEYANCE** in part, in accordance with the foregoing.

---

12 With respect to Commissioner Hayden, however, the Court finds he is entitled to official immunity, as there exists no evidence of malice or bad faith on his part.

      **IT IS FURTHER ORDERED** that Defendant City's Motion to Dismiss or Stay Cross-Claim (ECF No. 130) is **HELD IN ABEYANCE**, pending the Court's receipt of oral argument on the issues raised therein.

Dated this 20th Day of May, 2022.

                                    /s/ Jean C. Hamilton
                                    UNITED STATES DISTRICT JUDGE